UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
WILLIAM DIAZ and DANIQUE LEWIS a/k/a
DARRYL SMITH,

                              Plaintiffs,

      – against –

CITY OF NEW YORK, Commissioner MARTIN F. HORN;
Chief of Department CAROLYN THOMAS; Deputy
Commissioner RICHARD R. WHITE; Executive Officer
VINCENT CAPUTO; Chief of Facility Operations PATRICK
WALSH; Officer BUDDY BUSH, Shield # 12945; Officer
TOBIAS PARKER, Shield # 4447; Officer SHAWN CORT,
Shield # 15418; Officer CALVIN DEVINE, Shield # 10955;
Captain MARK DANIELS, Shield # 522; Officer FRITZ
MONTREVIL, Shield # 12836; JASON MENDEZ,
Shield # 13891; Officers JOHN/JANE DOES # 1-10,

                              Defendants.
----------------------------------------------------------------x

08 Civ. _____

RECEIVED
COMPLAINT AND
JURY DEMAND
U.S.D.C. S.D.N.Y.
CASHIERS
ECF CASE

## PRELIMINARY STATEMENT

       1.       This is a civil rights action brought by plaintiffs William Diaz ("Mr. Diaz") and Danique Lewis a/k/a Darryl Smith ("Mr. Smith") (collectively "Plaintiffs") for damages pursuant to 42 U.S.C. § 1983. While in the custody of the New York City Department of Correction ("DOC" or "the Department"), Mr. Diaz and Mr. Smith were each brutally beaten by staff members of the Emergency Service Unit ("ESU"), a division of the Department which operates throughout the New York City jails.

       2.       DOC and its supervisors are, or should be, aware that the ESU has been persistently identified with using brutal force and causing prisoners serious injury. The incidents involving Mr. Diaz and Mr. Smith are part of a pattern of incidents where inmates have alleged excessive force by ESU staff for which they suffered serious injuries. As a result of these

attacks, Plaintiffs suffered significant injuries, including, without limitation, to the head, and upper torso.

3. Plaintiffs now seek redress against the DOC employees who assaulted plaintiffs, their supervisors and the City of New York.

## JURISDICTION AND VENUE

4. This action arises under the Fourteenth Amendment to the United States Constitution and under 42 U.S.C. §§ 1983 and 1988.

5. The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331, 1343(a)(3)-(4) and 1367(a).

6. The acts complained of occurred in the Southern District of New York and venue is lodged in this Court pursuant to 28 U.S.C. § 1391(b).

## JURY DEMAND

7. Plaintiffs demand trial by jury in this action.

## PARTIES

8. William Diaz is a citizen of the United States and resided at Rikers Island in Bronx County at the time when these events occurred. At the time of the beating, Mr. Diaz was detained at the Anna M. Kross Center ("AMKC").

9. Danique Lewis a/k/a Darryl Smith is a citizen of the United States and resided at Rikers Island in Bronx County at the time when these events occurred. At the time of the beating, Mr. Smith was detained at the Otis Bantum Correctional Center ("OBCC").

10. Defendant City of New York ("City") is a municipal corporation which, through its Department of Correction ("DOC" or the "Department"), operates a number of detention jails. The Department, through its senior officials at the central office, in each facility,

2

and in its specialized units, promulgates and implements policies, including those with respect to the use, reporting and investigation of force by uniformed staff, and access to medical and other program services mandated by local law and court orders. In addition, senior officials in the Department are aware of and tolerate certain practices by subordinate employees in the jails, including those that are inconsistent with formal policy. These practices, because they are widespread, long-standing, and deeply embedded in the culture of the agency, constitute unwritten Department policies or customs. The Department is also responsible for the appointment, training, supervision, and conduct of all DOC personnel, including the defendants referenced herein.

11. At all times relevant hereto, Martin Horn was the Commissioner of DOC, acting in the capacity of agent, servant, and employee of defendant City, within the scope of his employment as such, and acting under color of state law. On information and belief, Defendant Horn, as Commissioner of DOC, was responsible for the policy, practice, supervision, implementation, and conduct of all DOC matters and was responsible for the training, supervision, and conduct of all DOC personnel, including the defendants referenced herein. As Commissioner, defendant Horn is also responsible for the care, custody, and control of all inmates housed in the Department's jails. As Commissioner, Horn was provided on a daily basis with reports of applications of force, allegations of unreported use of force, and other breaches of security in the Department jails. In addition, at all relevant times, defendant Horn was responsible for enforcing the rules of the DOC, and for ensuring that DOC personnel obey the laws of the United States and of the State of New York. Defendant Horn is sued in his individual capacity.

12.     At all times relevant hereto, Carolyn Thomas was the Chief of Department of DOC, acting in the capacity of agent, servant, and employee of defendant City, within the scope of her employment as such, and acting under color of state law. As Chief of Department, she was the highest ranking uniformed member of the department, and was responsible for the supervision, oversight, and discipline of the uniformed security staff in all the Department jails. She was also responsible for the care, custody, and control of all inmates in the Department jails. As Chief of Department, Thomas is provided on a daily basis with reports of applications of force, allegations of unreported use of force, and other breaches of security in Department jails. Defendant Thomas is sued in her individual capacity.

13.     At all times relevant hereto, Richard R. White was the Deputy Commissioner of the Department, Investigation Division. As Deputy Commissioner, his responsibilities included supervising the investigation of any and all incidents in which any employee of the Department used force against any inmate, or is alleged to have used force, and recommending Department discipline against staff believed to have violated Department policies and rules including those concerning use of force. Defendant White was provided on a daily basis with reports of applications of force, allegations of unreported use of force, and other breaches of security in Department jails. Defendant White is sued in his individual and official capacities.

14.     At all times relevant hereto, Vincent Caputo was the Executive Officer of the Emergency Services Unit. As Executive Officer, he was responsible for the supervision and oversight of uniformed staff assigned to the ESU. As Executive Officer, Caputo is provided on a daily basis with reports of applications of force, allegations of unreported use of force, and other

breaches of security in Department jails by members of the ESU. Defendant Caputo is sued in his individual capacity.

15. At all times relevant hereto, Patrick Walsh was the Chief of Facility Operations for the Department of Correction. As Chief of Facility Operations, he was responsible for the supervision, oversight, and discipline of all uniformed staff assigned to the Department of Correction, including the ESU. He was also responsible for the care, custody, and control of all inmates in the Department jails. As Chief of Facility Operations, Walsh is provided on a daily basis with reports of applications of force, allegations of unreported use of force, and other breaches of security in Department jails involving all uniformed staff including those assigned to the ESU. Prior to being made the Chief of Facility Operations, Walsh was the Assistant Chief of Special Operations, and, in that capacity, exercised supervisory authority over the ESU, and was provided on a daily basis with reports of applications of force, allegations of unreported use of force, and other breaches of security in Department jails involving the ESU. Defendant Walsh is sued in his individual capacity.

16. At all times relevant hereto, Defendant Mark Daniels, Shield # 522, was a captain within the DOC and assigned to the ESU, acting in the capacity of agent, servant, and employee of defendant City, within the scope of his employment as such, and acting under color of state law. On information and belief, Defendant Daniels worked at Rikers Island at the time of the incidents alleged herein, and participated or witnessed and failed to intervene in the beating of Mr. Diaz. Defendant Daniels is sued in his individual capacity.

17. At all times relevant hereto, Defendant Calvin Devine, Shield # 10955, was an officer within the DOC and assigned to the ESU, acting in the capacity of agent, servant, and employee of defendant City, within the scope of his employment as such, and acting under

color of state law. On information and belief, Defendant Devine worked at Rikers Island at the time of the incidents alleged herein, and participated or witnessed and failed to intervene in the beating of Mr. Diaz. Defendant Devine is sued in his individual capacity.

18.     At all times relevant hereto, Defendant Buddy Bush, Shield # 12945, was an officer within the DOC and assigned to the ESU, acting in the capacity of agent, servant, and employee of defendant City, within the scope of his employment as such, and acting under color of state law. On information and belief, Defendant Bush worked at Rikers Island at the time of the incidents alleged herein, and participated or witnessed and failed to intervene in the beating of Mr. Diaz. Defendant Bush is sued in his individual capacity.

19.     At all times relevant hereto, Defendant Tobias Parker, Shield # 4447, was an officer within the DOC and assigned to the ESU, acting in the capacity of agent, servant, and employee of defendant City, within the scope of his employment as such, and acting under color of state law. On information and belief, Defendant Parker worked at Rikers Island at the time of the incidents alleged herein, and participated or witnessed and failed to intervene in the beating of Mr. Diaz. Defendant Parker is sued in his individual capacity.

20.     At all times relevant hereto, Defendant Shawn Cort, Shield # 15418, was an officer within the DOC and assigned to the ESU, acting in the capacity of agent, servant, and employee of defendant City, within the scope of his employment as such, and acting under color of state law. On information and belief, Defendant Cort worked at Rikers Island at the time of the incidents alleged herein, and participated or witnessed and failed to intervene in the beating of Mr. Diaz. Defendant Cort is sued in his individual capacity.

21.     At all times relevant hereto, Defendant Fritz Montrevil, Shield # 12836, was an officer within the DOC and assigned to the ESU, acting in the capacity of agent, servant,

and employee of defendant City, within the scope of his employment as such, and acting under color of state law. On information and belief, Defendant Montrevil worked at Rikers Island at the time of the incidents alleged herein, and participated or witnessed and failed to intervene in the beating of Mr. Smith. Defendant Montrevil is sued in his individual capacity.

22. At all times relevant hereto, Defendant Jason Mendez, Shield # 13891, was an officer within the DOC and assigned to the ESU, acting in the capacity of agent, servant, and employee of defendant City, within the scope of his employment as such, and acting under color of state law. On information and belief, Defendant Mendez worked at Rikers Island at the time of the incidents alleged herein, and participated or witnessed and failed to intervene in the beating of Mr. Smith. Defendant Mendez is sued in his individual capacity.

23. At all times relevant hereto, Correction Officers John/Jane Does # 1-10 (collectively referred to herein as the "Doe Defendants"), whose actual names and shield numbers plaintiffs have been unable to ascertain notwithstanding reasonable efforts to do so, but who are sued herein by the fictitious designation "John Doe" and "Jane Doe," were officers of DOC, acting in the capacity of agents, servants, and employees of defendant City, within the scope of their employment as such, and acting under color of state law. On information and belief, Defendants John/Jane Does # 1-10 worked for the ESU at Rikers Island on July 10, 2007 and/or August 11, 2007 and participated in the assault on plaintiffs that took place on these dates. Defendants John/Jane Does # 1-10 are sued in their individual capacities.

24. John/Jane Does # 1-10, as well as Defendants Horn, Thomas, White, Caputo, Walsh, Bush, Parker, Cort, Devine, Daniels, Montrevil, and Mendez are collectively referred to as the "Individual Defendants."

## STATEMENT OF FACTS

New York City's Jails: A History of Abuse

25.    For decades, through Department reports and civil litigation, DOC has been aware of the routine, dangerous and unconstitutional use of excessive force by staff at individual facilities in the large, multi-jail New York City Department of Correction.[1]

26.    For example, *Sheppard v. Phoenix*, 210 F. Supp. 2d 250 (S.D.N.Y. 1998) (terminating injunction), was a class action that concerned the City's Central Punitive Segregation Unit (CPSU). That litigation unearthed abuse of prisoners and cover-ups sufficiently serious to merit criminal prosecution.

27.    *Ingles v. Toro*, 438 F. Supp. 2d 203 (S.D.N.Y. 2006) (approving stipulation of settlement), was a system-wide class action challenging the pervasive practice of using excessive force against inmates incarcerated in New York City's jails. This litigation revealed significant numbers of credible excessive force complaints from prisoners who had been seriously injured by staff in the City jails, including a number injured by staff assigned to the ESU. The settlement of this class action was intended to provide meaningful improvements in the training, practice and supervision of agency staff and investigators, and changes in the Department's use of force policy.

28.    DOC and its supervisors have also been made aware that the ESU – a special unit operating in all the jails – has been persistently identified with using unnecessary

---

[1] *See, e.g., Fisher v. Koehler*, 692 F. Supp. 1519 (S.D.N.Y. 1988), *injunction entered*, 718 F. Supp. 1111 (1989), *aff'd*, 902 F.2d 2 (2d Cir. 1990) [Correction Institution for Men]; *Jackson v. Montemagno*, CV 85-2384 (AS) (E.D.N.Y.) [Brooklyn House of Detention]; *Reynolds v. Ward*, 81 Civ. 101 (PNL) (S.D.N.Y.) [Bellevue Prison Psychiatric Ward]; *Sheppard v. Phoenix*, 91 Civ. 4148 (RPP) (S.D.N.Y.) [Central Punitive Segregation Unit].

force and causing prisoners serious injury. The incidents involving Plaintiffs in this action are of a pattern of use of force incidents where inmates alleged excessive force by ESU staff resulting in serious injuries.

29. Previous litigation has exposed serious and widespread abuses by members of the Emergency Service Unit. *See, e.g., Perez v. City of New York*, 06 Civ. 6467 (LBS)(DFE) (excessive force suit against ESU members) and *Scott v. City of New York*, 07 Civ. 3691 (GBD) (same).

30. Additionally, through DOC's elaborate reporting system, the Supervisory Defendants – Defendants Horn, Thomas, White, Caputo and Walsh – were aware of the pattern of a large number of incidents involving the use of unnecessary and/or excessive force by ESU members resulting in serious injuries to inmates but have failed to take sufficient steps to curb these abuses.

31. As of the time Plaintiffs were beaten, the Department and the Supervisory Defendants were aware of the unwillingness of the Department to impose meaningful discipline against ESU members who use unnecessary and excessive force on prisoners, or who fail to accurately and honestly report it.

32. Through all these cases and Department reports, DOC and its supervisors have been made aware of the widespread practice by ESU staff of using excessive and/or unnecessary force to injure, and not restrain, inmates. They have also been made aware of the failures of DOC's Investigation Division to adequately investigate allegations of misconduct and of the *de facto* refusal of the Department to bring effective disciplinary charges against its ESU officers to promote institutional reform and protect the safety of prisoners confined in DOC custody.

33. The Department and the Supervisory Defendants cannot credibly contend that they are unaware of the pattern of abuse that occurs with regularity in New York City jails – and, as addressed in this litigation, by ESU staff – and the failure of the Department to take sufficient measures to investigate and discipline this abuse.

34. The Department has not taken sufficient steps to curb the abuse that occurs on a daily basis in New York City jails and in particular within the ESU. Indeed, it allows that abuse to persist through inadequate investigations of allegations of misconduct and the failure to discipline officers in the face of obvious wrongdoing.

**William Diaz: An ESU Incident on July 10, 2007**

35. On or about July 10, 2007, at approximately 7:30 p.m., Mr. Diaz was walking in a line with other inmates in the AMKC corridor.

36. Members of the ESU were standing in this corridor.

37. As the line of inmates passed the ESU members, one inmate – not Mr. Diaz – laughed.

38. Apparently in response to this laugh, Officer Bush ordered Mr. Diaz to step out of the line and then he removed Mr. Diaz from the main corridor into a hallway, out of the view of wall-mounted video surveillance cameras.

39. Several other ESU officers followed.

40. Inside this hallway, Mr. Diaz complied with the order and ran his fingers through his mouth in order to demonstrate that nothing was in his mouth. Nothing was found in Mr. Diaz's mouth.

41. For no legitimate reason, Officer Bush struck Mr. Diaz in the face, causing Mr. Diaz to fall to the floor.

42. While on the floor, other ESU officers, including Officer Parker, punched and kicked Mr. Diaz in the face and upper body.

43. At no time prior to or during this attack did Mr. Diaz make any aggressive gesture toward any officer or supervisor, or present any risk of harm to any officer or supervisor.

44. None of the defendants intervened to prevent the assault on, or prevent further injury to, Mr. Diaz.

45. By failing to intervene in order to stop this assault, these defendants demonstrated a deliberate indifference to a substantial risk of serious harm to Mr. Diaz.

46. Officers Parker, Daniels, Devine, Cort and Bush then took Mr. Diaz to the intake area where he was ordered to take off his clothes. He struggled to do so because of his injuries.

47. One ESU officer shouted that if he did not take off his clothes immediately, they would "f–k you up again." The officer then smacked Mr. Diaz in the head causing him to fall and, again, hit his head.

48. Mr. Diaz was then forced to take a shower in order to remove the blood from his face.

49. He was held in the intake area for approximately two hours before he was taken to the facility medical clinic.

50. While in an intake area pen, Mr. Diaz lost consciousness. Medical staff found him lying on the floor, agitated and confused. He was brought to the facility medical clinic on a stretcher and, in the process of this transport, regained full consciousness.

51. Mr. Diaz had visible injuries on his face, head and upper torso, including bruising, swelling and tenderness to his right frontoparietal and zygomatic areas, as well as to both sides of the occiput; bruises and tenderness to the left shoulder and left upper back; tenderness to his right posterior neck; and a small laceration to his left ear.

52. Upon arrival at the clinic, it was determined that Mr. Diaz needed emergency medical health care, and he was sent to Elmhurst Hospital Center.

53. At Elmhurst, Mr. Diaz was treated for complications related to trauma and had multiple CT scans and x-rays taken to rule out fractures. He was discharged on July 12.

54. The following day, Mr. Diaz passed out again.

55. He was readmitted at Elmhurst Hospital Center on or about July 14.

56. His admission notes reflect "abnormal bruise over R[ight] temporaparietal area" and "abnormal tenderness over L[eft] clavicle, in slin[g]." He was transferred from Elmhurst Hospital to Bellevue Hospital on July 18 for further evaluation because of his fainting episodes. He was discharged on July 19 to Rikers Island, North Infirmary Command ("NIC"), where he remained until August 29.

57. Prior to the July 10 assault, Mr. Diaz had no history of fainting, dizziness or loss of consciousness.

58. Mr. Diaz continues to suffer physical and emotional injuries as a result of this assault.

59. At no time did Mr. Diaz assault or attempt to assault any officer, nor did he present a threat or perceived threat to the personal safety of any officer or to the security of the jail so as to warrant the repeated application of blows. Mr. Diaz did not provoke his beating nor did he conduct himself in any manner that would warrant any use of force, much less the

excessive force actually used. The Individual Defendants acted sadistically and maliciously and demonstrated deliberate indifference toward Mr. Diaz's rights and physical well-being.

60. This action has been commenced within one year after the happening of the events upon which the claims are based.

**Darryl Smith: An ESU Incident on August 11, 2007**

61. On or about August 11, 2007 at approximately 5:30 p.m., Mr. Smith was walking in a line with other inmates on his way back to the housing area from dinner when he encountered members of the ESU in the hallway.

62. For no apparent reason, one ESU officer called out to Mr. Smith and ordered him to "get on the wall."

63. Mr. Smith complied, faced the wall and placed his hands above his head.

64. The ESU officer struck Mr. Smith's head against the wall with great force, causing him to fall to the ground.

65. While lying on the floor, several officers, including Officers Montrevil and Mendez, kicked and beat Mr. Smith.

66. Mr. Smith was kicked on the left side of his jaw, among other places.

67. At no time prior to or during this attack did Mr. Smith make any aggressive gesture toward any officer or supervisor or present any risk of harm to any officer or supervisor.

68. None of the defendants intervened to prevent the assault on, or prevent further injury to, Mr. Smith.

Case 1:08-cv-04391-DC   Document 1   Filed 05/09/2008   Page 14 of 19

69. By failing to intervene in order to stop this assault, these defendants demonstrated a deliberate indifference to a substantial risk of serious harm to Mr. Smith.

70. The officers then grabbed Mr. Smith and dragged his body, up a flight of stairs, to the intake area, all the while, kicking and punching him.

71. Mr. Smith was then placed in a holding cell.

72. At a certain point, an officer entered the cell, placed metal handcuffs over his knuckles and punched Mr. Smith in both his eyes. The officer then placed those same handcuffs on Mr. Smith in a positively tight manner.

73. Soon thereafter, Mr. Smith was taken to Elmhurst Hospital where he received four sutures to each side of his face where he was hit with the handcuffs. He was diagnosed with a concussion, and suffered from a bloody nose, swollen jaw, contusions and abrasions all over this body, back injuries which continue to cause him pain, and short term memory loss.

74. Mr. Smith was treated for complications related to trauma and had multiple CT scans and x-rays taken to rule out fractures.

75. Mr. Smith continues to suffer physical and emotional injuries as a result of this assault.

76. At no time did Mr. Smith assault or attempt to assault any officer, nor did he present a threat or perceived threat to the personal safety of any officer or to the security of the jail so as to warrant the repeated application of blows. Mr. Smith did not provoke his beating nor did he conduct himself in any manner that would warrant any use of force, much less the excessive force actually used. The Individual Defendants acted sadistically and maliciously and demonstrated deliberate indifference toward Mr. Smith's rights and physical well-being.

77. Mr. Smith timely filed a written notice of claim with the Comptroller's Office at 1 Centre Street, New York, New York.

78. More than 30 days have passed since the filing of the notice of claim, and the City has not settled the action.

79. This action has been commenced within one year after the happening of the events upon which the claims are based.

### FIRST CLAIM FOR RELIEF
### 42 U.S.C. § 1983/Fourteenth Amendment
### (Against All Individual Defendants)

80. Plaintiffs repeat and reallege the foregoing paragraphs as if the same were fully set forth at length herein.

81. By reason of the foregoing, and by assaulting, battering, and using gratuitous, excessive, brutal, sadistic, and unconscionable force, or failing to prevent other defendants from doing so, the Individual Defendants deprived plaintiffs of rights, remedies, privileges, and immunities guaranteed to every citizen of the United States, secured by 42 U.S.C. § 1983, including, but not limited to, rights guaranteed by the Fourteenth Amendment to the United States Constitution to be free from gratuitous and excessive force.

82. Defendants acted under pretense and color of state law and in their individual and official capacities and within the scope of their employments as DOC officers and employees. Said acts by defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers. These defendants acted willfully, knowingly, and with the specific intent to deprive plaintiffs of their constitutional rights secured by 42 U.S.C. § 1983, and the Fourteenth Amendment to the United States Constitution.

83. Defendants Horn, Thomas, White, Caputo and Walsh knew and/or know that the pattern of physical abuse described above existed in the City jails prior to and including the time of the assaults on plaintiffs. Their failure to take measures to curb this pattern of brutality constitutes an acquiescence in the known unlawful behavior of their subordinates. The prevalence of these practices and general knowledge of their existence at the time of plaintiffs' beatings, and the failure of these defendants to take remedial action despite the fact that the misuse of force in City jails had been persistently brought to their attention, constitutes deliberate indifference to the rights and safety of the inmates in their care and custody, including the inmates named as plaintiffs in this action. These defendants' conduct has been a substantial factor in the continuation of such violence and a proximate cause of the constitutional violations alleged in this complaint.

84. As a direct and proximate result of the misconduct and abuse of authority detailed above, plaintiffs sustained the damages hereinbefore alleged.

**SECOND CLAIM FOR RELIEF**
**42 U.S.C. § 1983/Fourteenth Amendment**
**(Against Defendant City)**

85. Plaintiffs repeat and reallege the foregoing paragraphs as if the same were fully set forth at length herein.

86. Defendant City, through DOC, and acting under the pretense and color of law, permitted, tolerated and was deliberately indifferent to a pattern and practice of staff brutality and retaliation by the ESU at the time of plaintiffs' beatings. This widespread tolerance of correction officer abuse of prisoners constituted a municipal policy, practice or custom and led to plaintiffs' assaults.

87. By permitting, tolerating and sanctioning a persistent and widespread policy, practice and custom pursuant to which plaintiffs were subjected to a brutal beating, defendant City has deprived plaintiffs of rights, remedies, privileges, and immunities guaranteed to every citizen of the United States, secured by 42 U.S.C. § 1983, including, but not limited to, rights guaranteed under the Fourteenth Amendment to be free from gratuitous and excessive force.

88. As a direct and proximate result of the policy, practice and custom detailed above, plaintiffs sustained the damages hereinbefore alleged.

### AS AND FOR A THIRD CLAIM FOR RELIEF
### Assault and Battery
### (Against All Defendants)

89. Plaintiffs repeat and reallege the foregoing paragraphs as if the same were fully set forth at length herein.

90. In assaulting, battering, and threatening plaintiffs, the Individual Defendants, acting in their capacities as DOC officers, and within the scope of their employment, each committed a willful, unlawful, unwarranted, and intentional assault and battery upon plaintiffs.

91. The assault and battery by these defendants was unnecessary and unwarranted in the performance of their duties as DOC officers and constituted an unreasonable and excessive use of force.

92. Defendants, their officers, agents, servants, and employees were responsible for the assault and battery upon plaintiffs. Defendant City, as employer of each of

the Individual Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

        93.     As a direct and proximate result of the misconduct and abuse of authority detailed above, plaintiffs sustained the damages hereinbefore alleged.

## PRAYERS FOR RELIEF

WHEREFORE, Plaintiffs request that the Court grant the following relief jointly and severally against defendants:

1. Compensatory damages in an amount to be determined at trial for the physical and psychological injuries sustained by Mr. Diaz and Mr. Smith as a result of the events alleged herein.

2. Punitive damages against the Individual Defendants in an amount to be determined at trial.

3. An order awarding Plaintiffs reasonable attorneys' fees, together with the costs of this action.

4. Such other further relief as the Court may deem appropriate.

Dated: May 8, 2008
New York, New York

EMERY CELLI BRINCKERHOFF
& ABADY LLP

_____
Jonathan S. Abady (JA 5147)
Sarah Netburn (SN 4223)
75 Rockefeller Plaza
New York, New York 10019
(212) 763-5000

THE LEGAL AID SOCIETY
Jonathan S. Chasan (JC 9018)
Mary Lynne Werlwas (MW 6403)
199 Water Street, 6th Floor
New York, New York 10038
(212) 577-3530
*Counsel for Plaintiffs*

19